DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas that granted the motion for summary judgment filed by Lutheran Homes Society Family and Youth Services ("Lutheran Homes") and denied the motion for summary judgment filed by appellant Department of Human Services of Hancock County, Ohio ("DHS"). For the reasons that follow, this court affirms the judgment of the trial court.
Appellant sets forth the following assignments of error:
"ASSIGNMENT OF ERROR NUMBER ONE:
 "THE TRIAL COURT ERRED IN ITS INTERPRETATION OF THE TERMS OF THE PLACEMENT CONTRACT WHEN IT FOUND THAT THE PLACEMENT AGREEMENT DID NOT SPECIFY A TERMINATION DATE, AND THAT THE DHS TOOK NO ACTION TO TERMINATE THE CONTRACT WITH LUTHERAN HOMES, WHICH INTERPRETATION WAS IMPROPERLY UTILIZED TO AWARD SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFF/APPELLEE AND AGAINST DEFENDANT/APPELLANT.
"ASSIGNMENT OF ERROR NUMBER TWO:
 "THE TRIAL COURT ERRED IN ITS INTERPRETATION OF THE ORDERS AND JUDGMENT ENTRIES FILED IN HANCOCK COUNTY JUVENILE COURT NUMBERS 92-1355, 95-185 AND FEDERAL DISTRICT COURT IN CASE NUMBER 95CV7070, WHICH IMPROPER INTERPRETATION WAS WRONGLY UTILIZED TO AWARD SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFF/APPELLEE AND AGAINST DEFENDANT/APPELLANT.
"ASSIGNMENT OF ERROR NUMBER THREE:
 "THE TRIAL COURT ERRED IN FAILING TO ADDRESS AND APPLY THE ISSUES OF RES JUDICATA AND COLLATERAL ESTOPPEL TO THE FACTS OF THIS CASE BECAUSE HAD THE COURT APPLIED THE DOCTRINES THEN THE COURT WOULD HAVE BEEN OBLIGATED TO GRANT DEFENDANT/APPELLANT'S MOTION FOR SUMMARY JUDGMENT AND DENY PLAINTIFF/APPELLEE'S MOTION FOR SUMMARY JUDGMENT. BY DOING THE OPPOSITE AND GRANTING PLAINTIFF/APPELLEE'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT/APPELLANT'S MOTION FOR SUMMARY JUDGMENT, THE COURT MADE REVERSIBLE ERROR.
"ASSIGNMENT OF ERROR NUMBER FOUR:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING PLAINTIFF/APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHEN GENUINE ISSUES OF MATERIAL FACTS EXISTED."
The facts that are relevant to the issues raised on appeal are as follows. On November 9, 1992, appellant filed a complaint in dependency and neglect alleging that ten-year-old Troy S. was a neglected and abused child. Appellant was granted protective supervision over Troy and the child was placed with relatives, but that arrangement did not work out and Troy was returned to his mother's custody in early July 1993. Shortly thereafter, however, Troy's mother requested that her son be placed outside the home and appellant was granted temporary custody beginning July 16, 1993. In accordance with the DHS case plan calling for placement in a group home, Troy was placed with Lutheran Homes. According to the terms of the placement agreement with Lutheran Homes, appellant was to pay a per diem for each day of Troy's residency. Payments were due on a monthly basis, with interest of 1.5 percent per month or eighteen percent per annum assessed on all balances more than thirty days late.
On January 8, 1995, after Troy had been in residence with appellee for eighteen months, appellant filed a motion for immediate dispositional review in the Hancock County Court of Common Pleas, Juvenile Division, because temporary custody of Troy was going to expire on January 16, 1995. In its motion, appellant requested that Troy be returned to his mother's custody in accordance with the goal of the case plan.
The disposition hearing was held on February 2, 1995. Before the hearing began, however, appellant filed a motion for permanent custody or, in the alternative, emergency temporary custody of Troy. At the hearing, a social services worker for appellant testified that Troy's mother had told him she still did not feel she could care for Troy and did not want him returned to her home. The social worker testified further that Troy's mother had not completed the services that were required by the case plan. He further testified that, based on the foregoing, it was the opinion of appellant that it should continue to have custody and that Troy should remain with appellee. Counsel for Troy's mother expressed mother's desire that Troy remain in the group home even if appellant were not granted emergency custody. When the trial court asked if there was anyone from Lutheran Homes who could assure the court that Troy could remain in the home pending further court proceedings, mother's attorney stated that the representative from Lutheran Homes was in federal court at that moment. Mother presented the testimony of Lawrence Troutner, the director of student services for the Oregon Board of Education, who explained that the board works with appellee to provide educational services for the residents. When told that there were efforts underway to keep Troy in the program other than through custody with appellant, Troutner stated that to his knowledge appellee had no intention of releasing Troy until it was "forced to do so." He stated that appellee felt it was in Troy's best interest to remain there.
At that point, the trial judge stated that he had just been informed that the attorney for appellant was needed in federal court on a related matter. A recess was taken and, when appellant's attorney returned, he explained to the trial court that the federal judge had just issued a temporary restraining order enjoining DHS from removing Troy from his current educational and residential placement. The order from the United States District Court for the Northern District of Ohio, Western Division, was the result of a complaint for declaratory and injunctive relief filed against the local school board and DHS on behalf of Troy and his mother pursuant to the Individuals with Disabilities Act and other federal statutes. Appellant's attorney stated that the federal judge had told him that any attempt to interfere with Troy's current educational or residential placement would be met with contempt charges and that the order would remain in effect until at least February 16, 1995. The DHS attorney then stated that, given that development, the department would withdraw its request for emergency custody and would request that the trial court set the matter for adjudicatory hearing "with the understanding of Lutheran Group Homes and [Troy's mother] that the Department of Human Services is no longer paying for the placement, as we no longer have custody of Troy [S.]" The trial court ordered that appellant's motion for emergency custody be withdrawn, and continued the matter for adjudicatory hearing on the complaint for permanent custody.
The federal court continued the temporary restraining order on February 17 and again on March 21, 1995. In the February 17, 1995 order, the federal court addressed the issue of compensation for service providers, stating that "[p]resent service providers to continue to be compensated as per prior arrangements pending further court order and possible reimbursement or reallocation of responsibility."
On April 18, 1995, the federal court granted appellant's motion to dismiss the federal suit without prejudice to permit exhaustion of state remedies. The temporary restraining order was thereby terminated.
Troy remained in residence at Lutheran Homes until August 15, 1995, when he was released to his mother's custody. On August 30, 1995, Lutheran Homes filed a complaint in the Lucas County Court of Common Pleas seeking payment from appellant for Troy's residential care from February 2, 1995 through August 15, 1995. The amount in dispute is $40,911.12, plus interest. The complaint was voluntarily dismissed without prejudice on December 22, 1997 and refiled on July 22, 1998. The parties stipulated that all pleadings, produced documents, interrogatory answers, affidavits and exhibits filed in the previous case would be considered in connection with any party's motion for summary judgment in the newly filed case.
On July 30, 1999, each party filed a motion for summary judgment. In its motion, appellee asserted that appellant is responsible for paying for Troy's care until the child's release on August 15, 1995. Specifically, appellee argued that appellant is contractually liable because the placement agreement did not contain a termination date and because the agreement did not make custody of Troy a condition for appellant's financial obligation. Appellee also argued that the federal court order provided an independent basis for recovery by extending Troy's stay and requiring that the terms of payment remain as they were initially.
In its motion for summary judgment, appellant asserted that it was not responsible for payment beyond February 2, 1995 because it no longer had custody of Troy after that date. Appellant asserted that the placement agreement was effective only as long as it had custody. Appellant further argued that appellee is estopped from seeking recourse against the department because, at the hearing on February 2, 1995, when the department stated that it would no longer be paying for Troy's placement, appellee "conceded." As to the federal court order, appellant argued that the stay did not "revive, renovate, or modify" the placement contract and other court orders and that the federal court orders of February 17 and November 7, 1995 did not address the issue of payment for Troy's care after February 2, 1995.
On May 18, 2000, the trial court filed its judgment entry in which it found appellee's motion for summary judgment well-taken. In its judgment entry, the trial court noted that the placement agreement did not specify a termination date and that cancellation of the agreement on February 2, 1995 would have violated the federal court order. The trial court found that appellant therefore was required to continue paying for Troy's care through April 18, 1995, when the federal suit was dismissed. As to the remainder of the time in dispute, the trial court found that the Hancock County Juvenile Court still had jurisdiction over Troy and the only way for that jurisdiction to be divested would have been through dismissal of the complaint. The trial court noted that appellant filed a motion to dismiss the dependency complaint on May 5, 1995, but that there is no evidence in the record that the complaint was in fact dismissed. The trial court found that, absent a dismissal, "responsibility" for Troy remained in the hands of the Hancock County Juvenile Court and appellant. The trial court concluded that, other than filing the motion to dismiss that was never acted upon, appellant took no action to terminate the contract with appellee and that appellant consequently was liable for expenses associated with Troy's placement until August 15, 1995. It is from that judgment that appellant timely appeals.
In its first assignment of error, appellant asserts that the trial court erred by finding that the placement agreement did not specify a termination date and by finding that appellant took no action to terminate the contract with Lutheran Homes. As to the first issue, appellant argues that although the placement agreement did not explicitly state a termination date, it did contain language from which the intention of the parties and the duration could be discerned. This court has carefully reviewed the placement agreement and it is clear that there is no provision, either by specific date or by certain conditions, for the termination of the placing agent's responsibility to pay for the care provided by Lutheran Homes. Appellant simply agreed to pay Lutheran Homes a per diem rate for each day of Troy's residency and there was no mention of a time limit. Further, the agreement does not contain any conditions limiting appellant's financial responsibility to the duration of the temporary custody order that was then in effect. Contrary to appellant's assertion, we find no language in the agreement from which the intention of the parties as to duration can be inferred. Accordingly, the trial court did not err by finding that the placement agreement did not specify a termination date, and this argument is without merit.
Appellant further asserts that the trial court erred by finding that it had taken no action to terminate the contract with Lutheran Homes. Appellant argues that it made its intentions clear at the February 2, 1995 hearing when it requested on the record that the matter be set for adjudicatory hearing "with the understanding of Lutheran Group Homes and Miss [S.] that the Department of Human Services is no longer paying for the placement, as we no longer have custody of Troy [S.]."
The statement of appellant's attorney that the department would no longer be paying for the placement does not amount to "taking action" sufficient to terminate the placement agreement. Further, the record shows that on the day of the February 2, 1995 hearing, appellant filed a complaint for permanent custody or, in the alternative, emergency temporary custody. Filing the new complaint is not consistent with an intent to terminate the placement agreement. Attached to the complaint was a motion for an interim order of emergency custody pending an adjudicatory hearing. When the court learned during the course of the hearing that the federal court had issued an order that Troy remain in his current placement, appellant withdrew its motion for emergency custody and asked that the court set the matter for adjudication. These actions on appellant's part did not amount to an attempt to terminate the placement contract and, accordingly, we find appellant's argument without merit.
Based on the foregoing, this court finds appellant's first assignment of error not well-taken.
In its second assignment of error, appellant asserts that the trial court erred in its interpretation of the orders and judgment entries in Hancock County Juvenile Court case Nos. 92-2355 and 95-185 and federal court case No. 95CV7070. Appellant first argues that the trial court incorrectly found that the complaint and resulting custody order in case No. 92-1355 were never dismissed. The record reflects that in its judgment entry filed on May 18, 2000, the trial court stated that "nothing in the record indicates that there was a ruling on the motion [to dismiss the dependency complaint] or that the complaint was actually dismissed." The record does reflect, however, that on February 6, 1995, the juvenile court filed a judgment entry in case No. 92-1355 stating that "this matter is hereby terminated." Appellant further asserts that, while the matter was then assigned case No. 95-185 as a result of the newly-filed motion for custody, the department never obtained custody in that case. Appellant argues that it therefore cannot be held responsible for any placement of Troy with Lutheran Homes after the February 2, 1995 hearing.
Our examination of the transcript of the hearing on February 2, 1995 reveals that, while the juvenile court announced that case no. 92-2355 was "terminated," the matter continued under the juvenile court's jurisdiction as case no. 95-185, by virtue of the complaint for custody appellant filed early that day. We find, however, that whether the original complaint was dismissed is not dispositive because the new complaint was filed that same day, thereby assuring the jurisdiction of the juvenile court over this matter.
Appellant also argues that the trial court erred by interpreting the federal court orders as providing a basis for imposing financial liability upon it for Troy's care. Appellee responds that the temporary restraining order issued by the federal court acted to preserve the status quo, thereby leaving custody of Troy with appellant.
On February 2, 1995, the federal court issued an order stating that:
 "The Defendants are enjoined from removing Troy S. from his current educational placement pending judicial determination on the merits by this Court, and the Defendants are enjoined from taking any action that would affect Plaintiff Troy S.'s right to remain in his current residential and educational placement pending a judicial determination on the merits of his Complaint * * *."
On February 17, 1995, the federal court continued the temporary restraining order, stating that:
 "[p]resent service providers to continue to be compensated as per prior arrangements pending further court order and possible reimbursement or reallocation of responsibility."
 On March 21, 1995, the federal court again continued the temporary restraining order "pending adjudication of motions to dismiss or further court order."
Based on the foregoing, we find that the trial court did not err in its interpretations of the juvenile court and federal court orders and, accordingly, appellant's second assignment of error is not well-taken.
In its third assignment of error, appellant asserts that the trial court erred by failing to address and apply the issues of res judicata
and general estoppel to the facts of this case. This argument is without merit.
Where a final judgment exists, the doctrine of res judicata prevents parties or their privies from re-litigating facts, issues, or theories in a subsequent suit that were or might have been litigated in a prior suit. Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379 at 382-383. The doctrine of res judicata clearly is not applicable to this case and there was no reason for the trial court to consider it. The proceedings in the Hancock County Juvenile Court and federal court did not arise from or involve in any way the issue of what entity was responsible for the cost of Troy's residential care. That issue, in fact, could not have been litigated in juvenile court or federal court because the matter to be determined — arising from Lutheran Homes' breach of contract claim under state law — is beyond the jurisdiction of either court. Accordingly, the doctrine of res judicata is inapplicable in this instance and the trial court did not err by failing to consider it.
Appellant further asserts that appellee should be estopped from looking to the department for payment for Troy's care, in part because appellee acquiesced to the department's assertion at the February 2, 1995 hearing that it would no longer be financially responsible for Troy's care. In support of this argument, appellant looks to the dialog that took place at the hearing when counsel for appellant asked the trial court to set the matter for an adjudicatory hearing "with the understanding of Lutheran Group Homes and Miss [S.] that the Department of Human Services is no longer paying for the placement, as we no longer have custody of Troy [S.]." Counsel for appellee responded that she had "no objection to that." It appears to this court that counsel for appellee was stating that she had no objection to the matter being set for further hearing, not that she was agreeing that appellant should no longer pay for Troy's care. Appellant further asserts that appellee should be estopped from attempting to obtain reimbursement from the department because appellee looked to the department only as a last resort. Assuming, arguendo, that appellee's decision to file suit against appellant came as a "last resort," that decision would not be sufficient to estop appellee from arguing appellant's responsibility in this matter.
Based on the foregoing, this court finds appellant's arguments without merit and appellant's third assignment of error is not well-taken.
In its fourth assignment of error, appellant asserts that the trial court erred by granting summary judgment because genuine issues of material fact exist. Appellant asserts that issues of fact exist as to: 1) whether there was a termination date specified in the placement contract and whether the contract was in fact terminated; 2) the meaning of the federal court orders; 3) as to whether Elizabeth Czaka, Troy's "surrogate parent" and director of the group home in which Troy resided, was acting as an employee of Lutheran Homes and on its behalf in bringing the federal lawsuit; 4) what knowledge Edward Marks, counsel for Troy's mother, had and to whom it should be imputed, and 5) the significance of what appellant describes as appellee's "records changes" after February 2, 1995.
In reviewing a summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
We note first that appellant merely lists the questions set forth above without explaining how any of them are material to the determination of this case. Further, interpretation of the placement contract and interpretation of court orders were questions of law for the trial court, not issues of fact. As to Marks and Czaka, the roles they played in this matter did not in any way raise issues of fact that were material to a determination of whether appellant is responsible for the expenses incurred by Lutheran Homes for Troy's care between February 2 and August 15, 1995. Based on the foregoing, as well as our findings as to Assignments of Error Nos. One through Three above, this court finds that there remain no genuine issues of material fact and appellee is entitled to judgment as a matter of law. Accordingly, appellant's fourth assignment of error is not well-taken.
On consideration whereof, this court finds that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J.
James R. Sherck, J. and Richard W. Knepper, J. CONCUR.